IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LAURENCE R. GOODEN, | ) | 8:08CV55 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| SCOTT SAMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 50). As set forth below, the Motion is granted.

## I. BACKGROUND

Plaintiff Laurence R. Gooden ("Gooden") filed his Complaint in this matter on February 4, 2008. (Filing No. 1.) After initial review, Gooden was given leave to file an Amended Complaint to add parties. (Filing No. 32.) However, Gooden failed to effect service of process on the newly-added Defendants and those Defendants were dismissed from this matter. (Filing No. 34.) Both the Memorandum and Order requiring Gooden to effect service of process on the newly-added Defendants, and the Memorandum and Order dismissing those Defendants for failure to serve, were sent to Gooden. Although Gooden claims that he did not receive these documents, neither were returned to the court as undeliverable. (*See* Docket Sheet.) Gooden requests another chance to add these Defendants and attempt to serve them. (Filing No. 39.) However, this matter has been pending for more than a year, discovery has been conducted and is now closed, and a Motion for Summary Judgment is pending. Gooden had his chance to add these Defendants and did not, and the court will not allow him another chance to do so at this late stage of the proceedings.

Defendant "Unknown" Sampson, who has been identified in the pleadings as Scott Sampson[1] ("Sampson"), filed his Motion for Summary Judgment on July 16, 2009. (Filing No. 50). Along with his Motion, Defendant also filed an Index of Evidence and Brief in Support. (Filing Nos. 51 and 52.) Despite having more than two months in which to do so, Plaintiff did not file an opposition or any other response to Sampson's Motion. (*See* Docket Sheet.) However, on September 28, 2009, Plaintiff filed a Motion for Summary Judgment, Brief in Support, and Index of Evidence. (Filing Nos. 53, 54, and 55.) The deadline for submitting dispositive motions in this matter was July 25, 2009. (Filing No. 33.) Plaintiff's Motion was filed more than three months after that deadline passed. Further, Plaintiff never requested additional time to file a dispositive motion, nor is any reason for his untimely filing set forth in any of his pleadings. As such, the court will not consider these late-filed documents.[2]

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the

---

[1] The court will direct the Clerk of the court to update the court's records to include the Defendant's full name.

[2] None of the "exhibits" submitted by Plaintiff are authenticated, as required by the Federal Rules of Civil Procedure and this court's Local Rules. Moreover, Plaintiff's Brief in Support and Index of Evidence consist of nothing more than a restatement of Plaintiff's Complaint, with no evidentiary or factual support aside from Plaintiff's own unsupported allegations. Therefore, even if the court were to consider Plaintiff's late-filed documents, this Memorandum and Order would not change.

2

movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

Defendant submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted any "concise response" to those facts. Further, Defendant submitted evidence which was properly authenticated by affidavit. Plaintiff has not. This matter is deemed fully submitted and the material facts set forth by Defendant in his Brief are "deemed admitted" and are adopted below.

## II. RELEVANT UNDISPUTED FACTS

1. At all relevant times, Gooden was a pretrial detainee at the Douglas County Department of Corrections ("DCDC"), and was originally admitted to the DCDC on March 29, 2007.

2. In his Complaint, Gooden alleges that he was "beaten pretty badly" by two other inmates while incarcerated at the DCDC.

3. Gooden alleges he had been placed in medical lockdown but was scheduled to be transferred back to the general population. Gooden states he "complained" to another officer and Sampson about his continuing injuries and his desire to remain in the Medical Unit.

4. Gooden's request to remain in medical was denied by Dr. Gensler which led, in part, to the filing of a separate complaint against Dr. Gensler. (*See* Case No. 8:07CV253.)

5. Gooden had also previously complained about the design of the "bunks" in the general population area and filed a complaint against DCDC Director Newton

alleging a design defect. (*See* Case No. 8:07CV319.) Both of these separate cases have been dismissed.

6. On November 30, 2007, Sampson was posted as the second responder on Floor 2B. He entered the Housing Unit to deliver a "kite" at the request of Gooden.

7. While Sampson was in the Housing Unit, Nurse Sabrina Brooks entered the Housing Unit to pass out medication to two of the inmates, one of whom was Gooden.

8. When medications are delivered to the inmates they are required to put the medication in their mouth, swallow it, and then the correctional officer is required to observe the inside of the inmate's mouth to make sure the medication has been swallowed.

9. Rather than put the medication in his mouth, Gooden "thumbed the medication" by placing the medication between his thumb's digital tip and the palm of his hand in an attempt to conceal the medication.

10. Sampson instructed Gooden to swallow the medication and he refused. Gooden continued to ignore the orders of Officer Sampson and continued to talk to the nurse while "thumbing" the medication.

11. Sampson again instructed Gooden to swallow the medication and he refused. Gooden then turned to the side and appeared to put the medication in his mouth.

12. As required, Sampson ordered Gooden to open his mouth so that he could see that the medication had been swallowed.

13. Gooden refused, and said he was unable to open his mouth because of the injuries sustained in the altercation with the other inmates on November 17, 2007.

14. Sampson stated that he only needed him to open his mouth enough to show that the medication was swallowed.

15. Gooden again refused and turned his back and began talking to the nurse again. Sampson interrupted Gooden's conversation with the nurse by placing his hand on his arm and again requested that Gooden open his mouth.

16. Gooden jerked away from Sampson, raised both arms in the air and stated "What – you want to kick my ass?"

17. Sampson then Ordered Gooden to return to his cell, but Gooden refused to do so.

18. Officer Sampson then secured Gooden's arm to his side and again instructed Gooden to return to his cell. Sampson ordered Gooden to walk to his cell and secured Gooden's wrist and the back of his arm with his hands. Gooden then began walking toward his cell.

19. Gooden offered little resistance as he was being escorted, so Sampson released Gooden's wrist and placed his hand under Gooden's arm pit and escorted him shoulder to shoulder to his room.

20. As they were walking shoulder to shoulder to the cell, Gooden yelled at the rest of the inmates on the Housing Unit and turned his head from side to side yelling at the other inmates, creating a general disturbance.

21. As Gooden yelled and turned his head from side to side, Sampson was able to obtain a good view of the inside of Gooden's mouth and was then able to verify that the medication had indeed been swallowed.

22. Gooden walked willingly into his room and Sampson secured the door to Gooden's cell by locking the cell door. Sampson then informed his sergeant and lieutenant about the incident, in accordance with policy.

23. The incident was investigated, reports were written, and it was found that Gooden was in violation of the "DCDC Policy on Inmate Regulations;" "Policy on Misconduct" and "Posed a Threat to the Security of the Facility."

24. As a direct result of Gooden's conduct on November 30, 2007, with the medication "thumbing," refusing to follow Sampson's orders, creating a disturbance in the Housing Unit, and requiring an escort to his cell, Gooden was placed in lockdown for 24 hours.

25. Furthermore, Gooden's injuries sustained on November 17, 2007, during the altercation with the other inmates were confined to his face and head. He never complained to anyone about any injury to his arms, and Gooden was personally observed and video recorded waving his arms wildly during the November 30, 2007, incident without any difficulty.

26. During the November 30, 2007, incident, Gooden never once complained to Sampson that he was hurting him or causing him any physical discomfort whatsoever.

27. The incident was fully investigated, and the investigation and review of the videotape demonstrated that Sampson had not used force, but correctly and

according to policy, properly controlled the inmate and escorted him back to his cell without further incident.

28.  It is the policy of the Douglas County Department of Corrections to provide each inmate, upon arrival, the Douglas County Department of Corrections Inmate Handbook, which was provided to Laurence Gooden.

29.  The November 30, 2007, incident was thoroughly investigated by other commanders as well as Director Newton.

30.  Gooden's complaints about Sampson were investigated by other officers as well as Director Newton who read all applicable reports and personally reviewed the video recording of the incident.

31.  Director Newton found Sampson's conduct to be appropriate and reasonable and within the scope of his duties as a correctional officer to protect the staff and preserve the security of the facility.

32.  Director Newton denied Gooden's grievance and further recommended to Gooden that in the future he should comply with the DCDC policies requiring the inmates to follow the instructions and orders of the officers and medical staff.

(Filing Nos. 51 and 52.)

### III.   ANALYSIS

#### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### B.     Defendant's Motion

Defendant argues that he is entitled to summary judgment because Plaintiff has not shown the violation of a constitutional right. (Filing No. 52 at CM/ECF pp. 21-25.) The court agrees. As an initial matter, the court must determine whether Sampson is sued in his individual or official capacity, or both. Plaintiff does not specify the capacity in which Sampson is sued. Where a plaintiff does not specify the capacity in which a defendant is sued, it is presumed that a defendant is sued in his official capacity only. *See, e.g.*, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or

her official capacity."). In addition, a claim against an individual, in his official capacity, is in reality a claim against the entity which employs the official. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. . . . A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity. . . .") (quotations omitted). Thus, the court assumes that Sampson is sued in his official capacity only, which is actually a suit against Douglas County, Nebraska.

As a pretrial detainee, Plaintiff's claims arise under the Fourteenth Amendment. A pretrial detainee asserting a claim for cruel and unusual punishment does so under the Fourteenth Amendment because punishment, as contemplated by the Eighth Amendment, cannot occur until after "a formal adjudication of guilt in accordance with due process of law." *Doe by and Through Doe v. Washington County*, 150 F.3d 920, 922 (citation omittted); *see also Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Thus, the basic question is whether the conditions complained of amount to punishment. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). However, as set forth in *Smith*:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. The Government has legitimate interests that stem from its need to manage the facility in which the individual is detained. Furthermore, there is a *de minimis* level of imposition with which the Constitution is not concerned.

*Id.* Regarding excessive force claims, the court must determine whether the officer "acted in good faith or maliciously and sadistically," and whether the force used by the officer exceeded the force needed. *Freeman v. Jackson*, 107 F.3d 875 (8th Cir. 1997) (unpublished, per curiam) (citation omitted).

9

Here, Gooden repeatedly refused to take his medication when directed to do so by Sampson. (Filing No. 51-2, Attach. 1, at CM/ECF pp. 2-3.) When he did take it, Gooden refused to allow Sampson to confirm that he had done so. (*Id.* at CM/ECF p. 3.) Sampson ordered Gooden to return to his cell, and when Gooden refused to do so, Sampson took hold of Gooden's arm and walked with Gooden to his cell. (*Id.* at CM/ECF p. 4.) Sampson was eventually able to confirm that Gooden had taken his medication, but not before Gooden created a "general disturbance" by yelling, turning his head from side to side, and waving his arms wildly. (*Id.*) Gooden was later disciplined for the November 30, 2007, incident because he posed a threat to the security of the facility. (*Id.*) In short, Gooden refused to follow Sampson's orders and created a disturbance. He posed a threat to security and Sampson briefly restrained him so that Gooden could return to his cell without further incident. There is nothing on the record before the court that shows Sampson intended to punish Gooden or that the force used was excessive in any way. Rather, Sampson's restraint of Gooden was a *de minimis* use of force and furthered Sampson's "need to manage the facility" to prevent additional threats to the safety of Gooden or other inmates. In short, Gooden has not shown that Sampson's actions violated his constitutional rights and summary judgment is therefore warranted.[3]

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment (filing no. 50) is granted. This matter is dismissed with prejudice as to all claims.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

---

[3] Because summary judgment is granted on this ground, the court need not reach Sampson's other arguments. However, the court notes that service on Sampson was sufficient, and that qualified immunity is not applicable under the circumstances, given that Sampson is sued only in his official capacity.

3. All other pending motions are denied as moot.

4. The Clerk of the court is directed to update the court's records and substitute the Defendant's first name "Scott" for "Unknown."

5. The Final Pretrial Conference, schedule for October 1, 2009, at 9:30 a.m., is cancelled.

October 1, 2009.                    BY THE COURT:

                                    s/ Joseph F. Bataillon
                                    Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.